IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANTHONY TORTORICE, SR., | |
|---|---|
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 17-2626 |
| MICHAEL BARNES, *et al.*, | |
| *Defendants*. | |

PAPPERT, J.                                                                               November 6, 2017

**MEMORANDUM**

      Anthony Tortorice, Sr. has been a member of the International Alliance of Theatrical Stage Employees Local 8 since 1984, serving as the Union's Vice President under Michael Barnes for nine years. For more than twenty years, Tortorice was the Head Carpenter and Steward at the Merriam Theater, which the Kimmel Center, Inc. acquired in 2009. In addition to his role at the Merriam, Tortorice worked for Elliott-Lewis Corporation as a Steward in the Pennsylvania Convention Center, having been appointed to that position by Barnes in 2008. A collective bargaining agreement between the Kimmel Center and the Union established the terms and conditions of Tortorice's employment at the Merriam and a separate CBA between the Union and Elliott-Lewis governed his employment at the Convention Center.

      Last year, Tortorice was suspended from working at the Convention Center by Elliott-Lewis and terminated from his position at the Merriam by the Kimmel Center. Tortorice filed this lawsuit asserting hybrid claims under Section 301 of the Labor Management Relations Act against the Union for breaches of the duty of fair representation and the Kimmel Center and Elliott-Lewis for breaches of the CBAs.

Pursuant to the Labor Management Reporting and Disclosure Act, Tortorice also alleges that Barnes, along with the Union, retaliated against him for criticizing Barnes' leadership as Union President.

The Union, Kimmel Center and Elliott-Lewis moved to dismiss the Section 301 claims on the ground that they were not brought within the applicable six-month statute of limitations. The Court denies the motions because it cannot determine at this early stage when that limitations period began to run.

# I

On June 29, 2016, Union member David Kenney accused Tortorice of fraudulently submitting duplicate billing for the same hours on the same days to the Convention Center and Merriam, and of engaging in conduct to conceal his behavior. (ECF No. 1, Ex. E.) The next day, the Union's Executive Board approved the charges against Tortorice. (ECF No. 1, Ex. F.) On July 6, Elliott-Lewis suspended Tortorice from working at the Convention Center to investigate his time and attendance records. (ECF No. 1, Ex. G.) On July 15, Tortorice was informed by Barnes that the Kimmel Center was also suspending him pending an internal investigation, (ECF No. 1, Ex. H.), which ultimately resulted in his termination on August 25, (ECF No. 1). In the July 15 email, Barnes told Tortorice that "[t]he [U]nion will be representing your interest as outlined in the contract between the parties." (ECF No. 1, Ex. H.) However, at no point did the Union file grievances on Tortorice's behalf against either employer. (ECF No. 1.)

Later in the day on July 15, Tortorice learned of the Union's June 30 charges against him. (ECF No. 1, Ex. I.) The Union held a trial on the charges on July 26, after

which Tortorice was found guilty and expelled from the Union for ten years.  (ECF No. 1, Ex. K.)  On September 10, he appealed the July 26 decision to the Union's International President, Matthew Loeb, who affirmed the decision on January 6, 2017. (ECF No. 10, Ex. 1; ECF No. 1, Ex. J.)  On February 3, Tortorice appealed Loeb's decision to the General Executive Board.  (ECF No. 1, Ex. K.)  On May 11, the Board denied his appeal, exhausting the internal appeals process, (ECF No. 1, Ex. L), and Tortorice filed this lawsuit on June 12, (ECF No. 1).

The Union, Elliott-Lewis and the Kimmel Center contend that the applicable six-month statute of limitations bars Tortorice's claims because he knew, or should have known at the latest by September 21, 2016, that the Union would not represent him in grievance proceedings against his employers.  (ECF Nos. 10 & 12.)  Tortorice argues that his appeals of the Union's finding against him tolled the limitations period until he received the final decision on those appeals.  He asserts that it was only at that time that he should have known further union appeals were futile.  Tortorice further claims that the determination of when the limitations period began to run is a fact-intensive inquiry more appropriately addressed at summary judgment.  (ECF Nos. 14 & 16).

## II

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  To survive a Rule 12(b)(6) motion, the factual allegations in the complaint must "be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations [] are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The Court is required

to accept all allegations in the complaint as true and to draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384–85 (3d Cir. 1994).

Defendants can invoke a statute of limitations defense in a 12(b)(6) motion. However, "[o]nly where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (emphasis in original) (citation omitted); *see also Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint.") (citing *id*. at 249).

## III

Hybrid Section 301 cases are those in which employees bring claims against their employer for breaching the CBA and their union for violating the duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983). Such claims are permitted "when the union representing the employee . . . acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation" and effectively prohibit relief under the CBA's grievance procedures. *Id.* at 164. The "'claims are inextricably interdependent. "To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."'" *Id.* (modifications in original) (quoting *United Parcel Serv., Inc., v. Mitchell*, 451 U.S. 56, 66–67 (1981) (Stewart, J., concurring

4

in the judgment) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71 (1976))).

Hybrid Section 301 claims ordinarily must be filed within six months of the date the claims accrued. *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 260 (3d Cir. 1990) ("The six-month period commences 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'") (quoting *Hersh v. Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir. 1986) (quotation omitted)). The commencement of the statutory period on claims against employers is tolled, however, until the claims against the unions accrue because the union's breach of its duty is a necessary precondition to the claim against the employer. *See id.* at 261; *see also Albright v. Virtue*, 273 F.3d 564, 567 (3d Cir. 2001). Thus, the statute of limitations applicable to Section 301 claims begins to run when (1) "the plaintiff receives notice that the union will proceed no further with the grievance," *Vadino*, 903 F.2d at 260 (quoting *Hersh*, 789 F.2d at 232) (quotations omitted)), or (2) if there has been no explicit notice, when "'the futility of further union appeals became apparent or should have become apparent,'" *Vadino*, 903 F.2d at 260 (quoting *Scott v. Local 863, Int'l Bhd. of Teamsters*, 725 F.2d 226, 229 (3d Cir. 1984)).

This test is inherently "fact-intensive" as "'courts are faced with the challenge of determining when the futility of appeals was or should have been "clear" to the plaintiffs, thereby triggering the statute of limitations,'" which "'makes these cases difficult.'" *Luongo v. Village Supermarket, Inc.*, Civ. No. 17–0659, 2017 WL 2399088, at *4 (D.N.J. June 02, 2017) (quoting *Albright*, 273 F.3d at 573). In fact, "[t]his approach has been characterized as 'court-inspired vagueness,'" *Albright*, 273 F.3d at 573

5

(quoting *Scott*, 725 F.2d at 230)), with at least one court endorsing the "wisdom of the usual approach" of reserving statute of limitations determinations in Section 301 cases for summary judgment, *see Luongo*, 2017 WL 2399088, at *5.

## IV

### A

Construing the complaint and its supporting attachments[1] in the light most favorable to Tortorice precludes the Court from determining, at this stage, that the statute of limitations bars his claims. The Court is unaware of any "explicit notice" Tortorice received from the Union telling him that it would not pursue grievances on his behalf. To the contrary, Barnes told Tortorice in a July 15, 2016 email that "[t]he [U]nion [would] be representing [his] interest as outlined in the contract between the [Union and Kimmel]." (ECF No. 1, Ex. H.)

The Defendants contend that: (1) Tortorice knew or should have known that the Union was not going to represent him when the Union failed to file grievances or assist in any further steps in the grievance process within the time permitted by the CBAs (ranging from July 16, 2016 – September 21, 2016); (2) the Union's July 26, 2016 guilty finding and "effective expulsion" of Tortorice from the Union should have alerted him that the Union would not pursue grievances on his behalf in spite of the July 15, 2016 email; and (3) Tortorice knew or should have known by the time he filed the September

---

[1] The Court may consider these documents as Tortorice explicitly relied on them in his complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'") (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (citation omitted) (emphasis and modification in original).

6

10, 2016 appeal[2] that the Union had not filed, and did not intend to file, grievances on his behalf. (*See* ECF Nos. 10 & 12.) Considering all their arguments, the Defendants believe the claim against the Union accrued, at the very latest, on September 21, 2016, which means that Tortorice would have had to file this lawsuit on or before March 22, 2017. (*See* ECF No. 10.)

Tortorice argues that his September 10, 2016 appeal, and his efforts to exhaust his administrative remedies under the Union's By-Laws, tolled the limitations period. Tortorice sees his appeal as directly related to the adverse employment action because the Union, Elliott-Lewis and the Kimmel Center took disciplinary action against him for the same alleged fraudulent billing practices. He believes he could not file this lawsuit until his appeal was resolved because the Union's By-Laws prohibit members from "tak[ing] action of any kind, whatsoever" including but not limited to "redress of grievances but shall refer such matters" to union leadership, and provide that "Members shall exhaust all remedies by appeal within this Alliance," (ECF No. 1, Ex. A). Therefore, Tortorice contends that his internal appeal of the Union's adverse action should effectively serve as an appeal of the Union's decision not to file grievances on his behalf. (*See* ECF Nos. 14 & 16.)

**B**

Determining when the futility of further Union appeals became, or should have become, apparent is a difficult task, requiring a case-by-case factual assessment. *See Scott*, 725 F.2d at 229. For example, in *Albright* the Third Circuit reversed the District Court's decision dismissing a case because there was a genuine issue of fact as to when

---

[2] While the copy of the appeal attached to the Complaint was undated, (*see* ECF No. 1, Ex. K), the Defendants attached signed and dated copies, (*see* ECF No. 10, Ex. 1; ECF No. 12, Ex. A).

the limitations period began.[3] The plaintiffs filed an internal grievance with their union complaining about the method used to determine their seniority after being reinstated by their employer. A committee charged with assessing two "pilot" claims concluded the claims were untimely. The committee's decision included language informing the plaintiffs that the decision of the committee was "final," "with no appeal," and "that neither party will attempt . . . to void the decision." *Albright*, 273 F.3d at 573. Despite the definitive nature of the committee's language, the District Court's determination that the letter triggered the limitations period was reversed because subsequent correspondence between the plaintiffs and the union led plaintiffs to reasonably believe their appeal was not final and created a material issue of fact. *See Albright*, 273 F.3d at 573–75.

Here, the Complaint's allegations, taken as true and giving Tortorice the benefit of all reasonable inferences therefrom, preclude for now dismissal of the claims against the Defendants. The Union, Elliott-Lewis and the Kimmel Center took adverse actions against Tortorice at roughly the same time and on the basis of the same conduct. Tortorice was told by the Union that they would represent him in proceedings, at least against the Kimmel Center. If, as Defendants contend, the July 26, 2016 guilty finding and expulsion from the Union should have made it clear to Tortorice that the Union had no intention of representing him, then Tortorice could likewise reasonably believe the appeal of that decision could serve as an appeal of the Union's decision not to pursue grievances on his behalf.

---

[3] The motion was styled as a motion to dismiss, however, because the defendants attached affidavits and exhibits in support of the motion, which the court considered, the Third Circuit reviewed the case as one for summary judgment under Rule 56.

8

The thrust of the Union's response to Plaintiff's tolling argument is that Torotice's appeal was wholly unrelated to his discharges because he failed to mention the discharges or the Union's failure to file grievances on his behalf. Actually, paragraphs 60 and 61 of Tortorice's appeal refer to the correspondence he received from his employers on July 6, and July 15, 2016, and Tortorice includes them as exhibits to his appeal. (ECF No. 10, Ex. 1.) The correlation between the underlying dispute with the Union and the disciplinary action taken by Elliott-Lewis and the Kimmel Center, as well as the relevant provisions of the Union's By-Laws, leave the issue of whether the internal appeal tolled the limitations period suitable for development on a more complete factual record. *See Scott*, 725 F.2d at 229 (remanding case for determination of when limitations period began to run where plaintiffs had filed an internal appeal of union's decision not to seek redress for employer's decision to lay off plaintiffs); *Crafts v. General Motors Corp.*, 192 F. Supp. 2d 310 (D. Del. 2002) (tolling the statute of limitations in a Section 301 case due to plaintiff's pursuit of an internal union appeal where the subject of the appeal was the basis for the employer's adverse action).

The facts in this case are not yet clear enough to prevent reasonable minds from differing as to when the limitations period began for Tortorice's claims and the Court will take the "usual approach" of reserving a decision on that issue until summary judgment.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.